In Equity.

UNION WATER POWER COMPANY et als.,

*vs.*

LIBBEY & DINGLEY COMPANY et als.

LIBBEY & DINGLEY COMPANY et als.,

*vs.*

UNION WATER POWER COMPANY et als.

Androscoggin.     Opinion April 3, 1907.

*Deeds.   Reservation.   Same Construed.   Waiver.*

In the case at bar in which equity proceedings were instituted for the purpose of obtaining a determination, among other things, of the number of hours in each day during which the Libbey & Dingley Company as owners · of the Lincoln Mill, so-called, is authorized to use the amount of water to which it was found to be entitled, the following facts appear:   The Libbey & Dingley Company acquired its rights in question by virtue of a reservation in a deed from the Franklin Company to the Union Water Power Company dated December 5, 1878.   In this deed the description of the granted premises is separated and arranged under fifteen different captions comprising the several dams, canals, gate house lots and other items constituting the water power conveyed.   The paragraphs containing the reservation are found under the sixth head entitled "Gate House Lot," the material parts of which are as follows:

"This conveyance is made subject to all the rights which the said City of Lewiston possesses in the street or passageway aforesaid from its said lot .

to Main Street," (and several other rights therein enumerated.) "Excepting and reserving to said Franklin Company, its successors and assigns, the right forever to take from said Great Androscoggin River, where it now takes water for the Lincoln Mill, so-called, so much water as is necessary to furnish power for the machinery at present in said Lincoln Mill; said reservation being subject to all prior grants of water power made by the Lewiston Water Power Company or the Franklin Company to any corporations or persons.

"Subject also to all the conditions, obligations, limitations and provisions, applicable, contained in a certain indenture of lease from said Franklin Company to the Hill Manufacturing Company, dated December 30, A. D., 1865, and recorded in the Androscoggin Registry of Deeds; to which said indenture and its record reference is hereby made for a particular enumeration of said conditions, obligations, limitations and provisions."

Also in the aforesaid deed from the Franklin Company to the Hill Manufacturing Company it is provided that the latter "shall have the right to use and draw the amount of water hereby conveyed during the whole of the twenty-four hours of each and every day or any portion thereof, more than fourteen hours, provided such use and drawing more than fourteen hours per day shall not injure or interfere with any other use which the party of the first part, their successors and assigns, may desire to make of said water during the fourteen hours of each day" together with the further proviso that the said Hill Manufacturing Company should cease to use the water more than fourteen hours a day whenever the said Franklin Company should determine that such use is injurious to it the said Franklin Company and give written notice thereof to the said Hill Manufacturing Company. In accordance with the last aforesaid proviso, the Union Water Power Company, by written notice dated February 16, 1904, notified the Libbey & Dingley Company to cease using water for more than fourteen hours per day.

*Held:* 1. That the construction given by the presiding Justice to the deed of December 5, 1878 from the Franklin Company to the Union Water Power Company was correct, and that the reservation therein in favor of the Lincoln Mill, and not the conveyance itself, was made "subject to all conditions, obligations, limitations and provisions applicable" contained in the Hill indenture.

2. That the reservation in question must be held subject to the conditions, limitations and provisions of the Hill indenture as far as applicable, precisely the same as it would have been if all of such conditions, limitations and provisions had been copied verbatim into the reservation.

3. That upon the findings of the presiding Justice that the use of the water by the Libbey & Dingley Company in excess of fourteen hours a day was not shown to be injurious to the Union Water Power Company prior to the aforesaid notification, the latter cannot be deemed to have waived any rights by acquiescence in such excessive use prior to that time.

4. That while this conclusion that the Lincoln Mill became subject to the provision of paragraph sixth of the Hill indenture, providing for a day run and a night run and prescribing the manner in which the right is to be exercised, is based upon a legal construction of the reservation to the Franklin Company in favor of the Lincoln Mill, it is also manifestly in general accord with all of the grants made by the Lewiston Water Power Company prior to 1878, as well as all of the indenture of the Union Water Power Company after that date, and in harmony with the entire history of the development of this water power as well as the general policy indicated by its management and control for a quarter of a century.

In equity.   On exceptions  by Libbey & Dingley Company. Overruled.

Bill in equity brought by the Union Water Power Company and seven other corporations located at Lewiston, and a cross bill brought by the Libbey & Dingley Company also located at Lewiston. These equity proceedings were instituted for the purpose of obtaining a judicial determination of the respective rights of all the parties in the water power created by the dams, canals and head gates on the Androscoggin River at Lewiston.

These two causes were fully heard upon the bills, answers and proofs by the Justice of the first instance and his findings of fact, rulings and decrees cover eighty printed pages.

Exceptions were taken by the Libbey & Dingley Company to certain rulings made by the Justice of the first instance as the basis of his decree respecting the number of hours in each day during which the Libbey & Dingley Company, as owners of the Lincoln Mill, is authorized to use the amount of water to which it is found to be entitled.

The case appears in the opinion.

*White & Carter,* for Union Water Power Company.

*John A. Morrill,* for Libbey & Dingley Company.

SITTING :   EMERY, C. J., WHITEHOUSE, POWERS, PEABODY, SPEAR, JJ.

WHITEHOUSE, J.   The original bill brought by the Union Water Power Co. and seven other corporations located at Lewiston, and a cross bill filed by the Libbey & Dingley Co. also located at

Lewiston, were instituted for the purpose of obtaining a judicial determination of the respective rights of all the parties in the water power created by the dams, canals and head gates on the Androscoggin River at that place. The two causes were fully heard upon the bills, answer and proofs by a single Justice who made elaborate and exhaustive findings of fact and numerous rulings in matters of law. In accordance with these findings and rulings, decrees were filed comprising definite adjudications upon all of the questions involved respecting the rights of the parties in this water power. The single question presented to the Law Court arises upon exceptions taken by the Libbey & Dingley Co. to certain rulings made by the sitting Justice as the basis of his decree respecting the number of hours in each day during which the Libbey & Dingley Co. as owners of the Lincoln Mill, is authorized to use the amount of water to which it is found to be entitled.

According to the statement of facts a corporation known as the Lewiston Water Power Company appears to have been the original or parent company that acquired control of the land on both sides of the river at Lewiston prior to 1857 and owned all the water power which had then been developed at that point, excepting a small interest known as the Columbia mill power. In March, 1857, the Franklin Company, as successor to the rights of the parent company, acquired title to all the unsold and unused water power developed by the works of its predecessor, and December 5, 1878, in pursuance of a comprehensive scheme devised for the further development and more efficient management of this water power, conveyed to the Union Water Power Company organized for that purpose, all its right and title to this power, excepting and reserving the Lincoln mill power. But it held a controlling interest in the new company until long after the Libbey & Dingley Company had acquired title to the Lincoln Mill in 1893, through mesne conveyances from the Franklin Company.

The rulings of the presiding Justice to which these exceptions were taken, involve a construction of the reservation in this deed of December 5, 1878, from the Franklin Company to the Union Water Power Company. In this deed the description of the granted

premises appear to have been separated and arranged under fifteen different captions comprising the several dams, canals, gate house lots and other items constituting the water power conveyed, and the paragraphs containing the reservation in question are found under the sixth head entitled " Gate house lot " and are as follows :

" This conveyance is made subject to all the right which said City of Lewiston possesses in the street or passageway aforesaid from its said lot to Main Street, and also to all rights which said City of Lewiston possesses to lay pipes across the Upper or Main Canal and said above described parcel of land ; and to enter upon the same at all reasonable and proper times for the purpose of repairs and all matters incidental to the carrying out of the purpose and objects for which the conveyance from said Franklin Company to said City of Lewiston was made ; and also subject to the right of said City of Lewiston to build, construct, and maintain such gates, racks, and other works as may be needed to properly take the water from the River above said " dam No. 4," and to discharge the waste water into the River from the lower level, so called ; and for all other purposes for which said last mentioned conveyance was made, reference being made to said conveyance for a particular description of the same.    Excepting and reserving to said Franklin Company, its successors and assigns the right forever to take from said Great Androscoggin River, where it now takes water for the Lincoln Mill, so-called, so much water as is necessary to furnish power for the machinery at present in said Lincoln Mill; said reservation being subject to all prior grants of water power made by the Lewiston Water Power Company or the Franklin Company to any corporations or persons.

"Subject also to all the conditions, obligations, limitations and provisions, applicable, contained in a certain indenture of lease from said Franklin Company to The Hill Manufacturing Company, dated December 30, A. D. 1865, and recorded in the Androscoggin Registry of Deeds; to which said indenture and its record reference is hereby made for a particular enumeration of said conditions, obligations, limitations and provisions."

Among the provisions following the habendum of this deed of December 30, 1865, from the Franklin Company to the Hill Manu-

facturing Company, is the following found in paragraph VI, as follows :

" The Party of the second part, their successors and assigns, shall have the right to use and draw the amount of water hereby conveyed during the whole of the twenty-four hours of each and every day or any portion thereof, more than fourteen hours, provided such use and drawing more than fourteen hours per day shall not injure or interfere with any other use which the Party of the first part, their successors and assigns, may desire to make of said water during the fourteen hours of each day, and provided that said Party of the second part shall stop and put an end to said use and drawing of the water for more than fourteen hours per day, whenever said Party of the first part, their successors and assigns, owning said dam, water power, and canals, as aforesaid, or their Superintendent or Agent, shall determine that such use is, or if continued, would be injurious to said Party of the first part, their successors and assigns, and give written notice thereof to said Party of the second part, their successors and assigns, and if, upon such notice being given, such use by said Party of the second part, their successors and assigns, for more than fourteen hours per day is not discontinued, then and in that case, the Party of the first part, their successors and assigns, may enter upon the premises of the Party of the second part, their successors and assigns, and shut their gates, and take any other measures and do any other acts proper and necessary to prevent the continued use of said water for more than fourteen hours per day, so long as the same shall be injurious to said Party of the first part, their successors and assigns."

For the purpose of explaining.the references by number made in the findings and rulings of the presiding Justice to the prior grants from the Lewiston Water Power Company and the Franklin Company, and of indicating the degree of uniformity with which restrictions are therein imposed respecting the number of hours during which the water might be used by each of the several grantees, a tabulation of such prior grants may here be appropriately made in the order of their respective dates, as follows :

1. Bates Manufacturing Company, Nov. 5, 1856. For 14 hours.
2. Hill Manufacturing Company, Nov. 6, 1856. " 14 "
3. Androscoggin Mills, Nov. 15, 1862. " 14 "
4. Lewiston Bagging Company, Apr. 13, 1863. " 14 "
5. Lewiston Mills, Jan. 1, 1865. " 14 "
6. Hill Manufacturing Company, Dec. 30, 1865. " 14 "
7. Continental Mills, Feb. 10, 1866. " 12 "
8. Lewiston Falls Man'f'g. Co. May 29, 1869. " 12 "

(From a mill pond supplied through the water ways of Lincoln Mill.)

9. J. L. H. Cobb, Mar. 30, 1874. For 11 hours.
10. City of Lewiston, Nov. 5, 1877. " 12 " (Special.)
11. Same, Same. " 12 " (Special.)
12. D. Cowan & Co. Nov. 6, 1877. " 14 "
13. Union Water Power Company, Dec. 5, 1878, in question.

The Lincoln Mill property was conveyed by the Franklin Company to the Lincoln Mills in 1881 ; by the Lincoln Mills to Libbey & Dingley in 1893, and by Libbey & Dingley to the Libbey & Dingley Company in 1899.

In 1883 the Union Water Power Company by indentures granted the right to take additional water for power to the corporations then using the water, subject to the thirteen grants above named, and each for twelve hours a day.

The findings and rulings of the presiding Justice material to the decision of the question presented, are as follows :

" I therefore find that the Lincoln Mills was then, and the Libbey & Dingley Company is now, entitled to 250 cubic feet of water per second, falling 27.9 feet as stated, as being the amount which was necessary Dec. 5, 1878, to furnish power for the machinery then in the Lincoln Mill, but subject to prior grants.

" 2.   As to the number of hours during which this water may be used.   There is in the reservation no limitation, in so many words. But the Franklin Company held the water power right reserved, subject to all prior grants by the L. W. P. Co. or itself, and in the indentures making some of those grants, 3, 4, 5 and 7, the Franklin covenanted in effect that all future grants should be made sub-

stantially upon the same terms and conditions as set forth in those indentures, 3, 4, 5 and 7, so far as applicable. In each of those indentures the grant for a day run was for 14 hours only, including the usual meal time, except in 7 which was for 12 hours; and a subordinate right for water during the remainder of the 24 hours, as already stated. The plaintiffs contend that the Franklin Company, and its successors by grant or reservation of remaining amounts of water for power were and are in equity bound by the covenant above stated, if they had notice, actual or constructive; and that they, must hold their rights just as they would if their grantor had incorporated into their grants the terms which they knew it had covenanted to incorporate into them. I think this contention is sound. If I were the owner of a series of lots of land on a street, and, should sell one with the restriction that no house should be erected thereon nearer than a certain number of feet from the street, and should covenant that all future deeds of my remaining lots on the same street should contain the same restriction, I think that my grantees of those other lots, having notice of the covenant, would be in equity bound by it. I think the same rule applies here.

"But I also think that the same result necessarily follows from a proper interpretation of the language attached to the reservation in the indenture itself (13). The reservation of water was made expressly 'subject to all the conditions, obligations, limitations and provisions applicable, contained in a certain indenture of lease from said Franklin Company to the Hill Manufacturing Company, dated December 30, 1865, and recorded in Androscoggin Registry of Deeds; (10) which said indenture and its record reference is hereby made for a particular enumeration of said conditions, obligations, limitations and provisions.' It happens that this Hill indenture was the last prior grant of water from the upper canal, or Mill Pond, except that to the City of Lewiston. (10). The Hill and the Lincoln took water from substantially the same level, and would be similarly affected by like conditions and changes in the quantity of water in the river. Does the language of indenture 13 mean merely that the reservation is subject to the Hill indenture, with its conditions, obligations, limitations and provisions? Or did it mean

merely, as suggested by counsel, that the Franklin Company was to have the benefit of the limitations upon the Hill? Or was it subject to conditions, obligations, limitations and provisions, the same, that is, the same character, as were those contained in the Hill indenture? I think the last. It could not have meant that the Franklin Company, the owner of the reserved water, was to perform the obligations of the Hill, the owner of granted water at another place. The limitations and provisions in the Hill indenture related to the use of water from the upper canal, upon the Hill's mill lot. The Franklin Company could have nothing to do with such limitations and provisions. I think the language quoted cannot have any intelligible meaning unless it be that the reservation is to be holden subject to the same kinds of conditions, obligations, limitations and provisions as were contained in the Hill indenture, and subject to them, so far as applicable, in the same sense, as it would have been, if the conditions and so forth in the Hill indenture had been copied verbatim into the reservation. It was more than reserving the benefits of the limitations in the Hill indenture. It was to get them, by becoming subject to similar obligations and limitations on its own part, in the use of the water reserved."

"In the Hill indenture the right to use water for the day run was limited to 14 hours, including the usual meal times, and there was the same provision for a night run as was contained in the other leases, and which has already been stated. These provisions and limitations were applicable to the use of water under the reservation in the indenture of Dec. 5, 1878, 13.

" I therefore find that the Lincoln Mills was, and the Libbey & Dingley Company is, entitled under the reservation to draw 250 cubic feet of water for each and every second during 14 hours including the usual meal times, of each and every day, under a head of 27.9 feet as stated, for its day runs; and to the same amount under the same head during the whole of the 24 hours of each and every day, or any portion thereof, more than 14 hours, provided such use and drawing more than 14 hours per day shall not injure or interfere with any other use which the Franklin Company or its assigns, may desire to make of said water during the fourteen hours of each day

and provided that the use of water for more than 14 hours per day shall be stopped whenever the owner of the dams, water power and canals at Lewiston, or its Superintendent or Agent shall determine that such use is, or if continued, would be injurious to those having prior rights to the use of the water, and shall give written notice as is provided in paragraph VI. of the Hill indenture, dated Dec. 30, 1865, numbered by me 6. The latter right, for more than 14 hours per day, relates to night runs."

But it is contended in behalf of the defendant Libbey & Dingley Co. that the clause in question in the conveyance from the Franklin Company of December 5, 1878, referring to the indenture to the Hill Manufacturing Company of December 30, 1865, does not relate to the reservation in the clause immediately preceding, but to the conveyance itself; in other words that it is to be construed as though written " This conveyance is also subject to all the conditions, obligations, limitations and provisions applicable " in the Hill indenture and that the ruling of the presiding Justice is therefore erroneous. The defendant accordingly claims that it takes its rights under this reservation of the Franklin Company in favor of the Lincoln Mill without any limitation whatever respecting the number of hours each day during which it is authorized to draw the quantity of water to which it is entitled.

It is the opinion of the court that the construction adopted by the presiding Justice making the reference to the Hill indenture a part of the reservation is correct. In the first place it is more consistent with established rules for the correct use of language. If the clause containing the reference to the Hill indenture is to be deemed a separate paragraph, the words " It is " must be understood at the beginning in order to constitute a complete sentence, and when supplied the pronoun " it," in the absence of anything showing the contrary, must be presumed to refer to the appropriate substantive immediately preceding, instead of one more remote. According to familiar rules of grammar it would read as follows: " Said reservation is subject to all prior grants of water power."

"It is subject also to all the conditions and provisions of the Hill indenture."

If the scrivener had intended to make this reference to the Hill indenture relate to the conveyance itself, and not to the reservation, it is incomprehensible that he did not say : "This conveyance is subject also " to the provisions of the Hill indenture."

It has been noted that the paragraphs containing this reservation in regard to the Lincoln Mill, are found under the sixth caption of the deed in question, entitled " Gate House Lot ;" and it satisfactorily appears from the description of that part of the granted premises, that the paragraphs respecting the Hill indenture would not be relevant or appropriate at that point if designed to refer to the conveyance and not to the reservation. It will also be noticed that not only does the reservation in favor of the Lincoln Mill immediately precede the paragraph relating to the Hill indenture, but the two paragraphs immediately following also relate to the Lincoln Mill.

The presiding Justice was also warranted in holding that the language of the clause referring to the Hill indenture " cannot have any intelligible meaning unless it be that the reservation is to be holden subject to the same kind of conditions, obligations, limitations and provisions as were contained in the Hill indenture, and subject to them so far as applicable, in the same sense as it would have been if the conditions and so forth in the Hill indenture had been copied verbatim into the reservation."

But it appears from the statement of facts that many times between 1893 and 1903 water in excess of their right as found by the presiding Justice, was drawn by Libbey & Dingley and the Libbey & Dingley Company for the purpose of developing electricity ; and the defendant contends that the plaintiff acquiesced in this use of the power for twenty-four hours a day for more than ten years, in generating electricity for the public service in Lewiston and Auburn. But the presiding Justice further finds " that the case does not show that this twenty-four hours use of the water for electric lighting by the Libbey & Dingley Company, was injurious to the Union Water Power Company or to the lessees prior in right to the Libbey & Dingley Company for day runs or night runs, or that it interfered with any use which they or any of them desired to

make and had a right to make, of the water under their leases whether they were prior or subsequent to December 5, 1878. Under some conditions, as already found, the Libbey & Dingley Company had the right to use water for night runs, and the case does not show that it exceeded its right until 1903 and 1904." Upon these facts and findings the plaintiffs had no right or authority to prohibit the defendants from running nights unless their night use interfered with day runs in violation of the rights of such prior or subsequent grantees, and there would seem to have been no occasion for the plaintiff to give the written notice and request for a discontinuance of such use until the injurious consequences became manifest during the unprecedented drouth of 1903-4 when the notification was duly given.

As bearing upon the interpretation of the grants, reservations and indentures in question, it is permissible to consider in this connection that this whole water power was created primarily for the sole purpose of furnishing power for the operation of cotton mills, and that the question of the use of the water to generate electricity and develop electric power was not brought to the attention of the proprietors before 1893. It also appears that the Lincoln Mill was constantly used for the purpose of a Cotton Mill until after 1893.

The conclusion that the Lincoln Mill became subject to the provisions of paragraph VI, of the Hill indenture of 1865, providing for a day run and a night run and prescribing the manner in which the right is to be exercised, is thus deduced from a legitimate construction of the reservation to the Franklin Company in the grant of Dec. 5, 1878; but it is a satisfaction to observe that this result is manifestly in general accord with all of the grants above enumerated and described made by the Lewiston Water Power Company, or the Franklin Company prior to 1878, as well as all of the indentures made by the Union Water Power Company after that date, and in harmony with the entire history of the origin and development of this great water power as well as the general policy indicated by its management and control for more than a quarter of a century.

In view of this conclusion respecting the reservation in the conveyance from the Franklin Company of Dec. 5, 1878, it is unnecessary

to consider the proposition, also sustained by the presiding Justice, that the Franklin Company and its successors were and are bound in equity by the covenant found in indentures 3, 4, 5 and 7 hereinbefore specified, that all future grants should be made substantially upon the same terms and conditions as therein set forth so far as applicable. This question was critically examined by counsel and presented to the court in elaborate and exhaustive arguments, but the decision of it is now unnecessary to the determination of the questions presented by the exceptions.

*Exceptions overruled.*